1
2
3
4                           UNITED STATES DISTRICT COURT
5                          NORTHERN DISTRICT OF CALIFORNIA
6

7    AMBER KELLEHER,                            Case No.  13-cv-05450-MEJ
              Plaintiff,
8                                               **ORDER RE: MOTION FOR SUMMARY**
        v.                                      **JUDGMENT AND RULE 56(F) NOTICE**
9
10   JOHN E. KELLEHER,                          Re: Dkt. Nos. 109, 130
              Defendant.
11

12

13                                  **INTRODUCTION**

14          Plaintiff Amber Kelleher ("Plaintiff") brings this action against Defendant John E.

15   Kelleher ("Defendant"), alleging that her ex-husband and Defendant's brother, Daniel J. Kelleher

16   ("Daniel"), fraudulently transferred shares of WhiteHat Securities, Inc. to Defendant in December

17   2010.  Third Am. Compl. ("TAC"), Dkt. No. 118.  Plaintiff has brought a Motion for Summary

18   Judgment on her second cause of action for constructive fraudulent transfer pursuant to California

19   Civil Code section 3439.05.  Dkt. Nos. 109-11.  However, based on the parties' briefing, it became

20   clear there is no dispute that Defendant subsequently reconveyed the proceeds of the WhiteHat

21   shares back to Daniel in December 2011, nearly two years before Plaintiff filed this case.  *See*

22   Def.'s Fact ##45-46, Dkt. No. 123; Reply at 18, Dkt. No. 128.  Thus, the issue addressed in this

23   Order is whether Plaintiff may maintain her claims against Defendant given this reconveyance.

24   Having considered the parties' positions, relevant legal authority, and the record in this case, the

25   Court concludes that she may not, and issues this **TENTATIVE** ruling DENYING Plaintiff's

26   Motion for Summary Judgment and GRANTING summary judgment on all claims for Defendant

27   for the reasons set forth below.

28   //

United States District Court
Northern District of California

United States District Court
Northern District of California

# BACKGROUND

Daniel filed for divorce from Plaintiff on October 17, 2007 in the state of Montana.  Pl.'s Fact #1, Dkt. No. 110; Def.'s Fact ##1, 50.  On March 10, 2008, Plaintiff and Daniel entered into a Marital and Property Settlement Agreement (the "Agreement").  Pl.'s Fact ##2, 23; Def.'s Fact ##2, 62, 74.  As part of the Agreement, the Avalanche Ranch Trust was created to manage, sell, and divide the proceeds of a property located in Montana, named Avalanche Ranch (the "Ranch").  Pl.'s Fact #2, 5; Def.'s Fact ##2, 5, 86.  According to Defendant, Daniel invested approximately $14 million into the Ranch, developing it as a luxury resort.  Def.'s Fact ##59, 73, 86, 96.  Under the Agreement, Daniel was responsible for all property taxes, maintenance, insurance, repairs, and upkeep of the Ranch and was required to pay expenses in the amount of $21,000 per month.  Pl.'s Fact ##5, 16, 23; Def.'s Fact ##5, 16, 23, 72, 92.  The Agreement also obligated Daniel to pay Plaintiff $7,500 per month.  *See* Pl.'s Fact ##16, 23, 31; Def.'s Fact ##16, 23, 72.

In January 2010, however, Daniel began defaulting on these payments.  Pl.'s Fact #6; Def.'s Fact #6.  Daniel subsequently petitioned a Montana state court for relief from paying these obligations on the ground that he was no longer financially able to make payments.  Pl.'s Fact ##8, 20; Def.'s Fact #20.  Daniel testified through an April 2, 2010 Affidavit that he could no longer afford to make payments for the Ranch's expenses.  Pl.'s Fact #17; Def.'s Fact #17.  Under oath at a hearing on May 6, 2010, Daniel testified that he no longer had the funds or assets available to continue paying the nearly $30,000 per month under the Agreement.  Pl.'s Fact #24; Def.'s Fact #24.  On October 5, 2010, a Montana court held Daniel in contempt for his failure to pay Plaintiff $7,500.00 between May to August 2010 and gave Daniel until November 30, 2010 to purge the contempt by making the payments.  Pl.'s Fact #40; Def.'s Fact #40.

Around December 31, 2010, Daniel transferred shares in WhiteHat Securities to his brother, the Defendant.  Pl.'s Fact #45; Def.'s Fact #45.  Daniel transferred the WhiteHat shares as a gift to Defendant.  Pl.'s Fact #47; Def.'s Fact #47.  Plaintiff asserts that Daniel subsequently absconded, and Defendant agrees that Daniel has left Montana, although he asserts he does not know where Daniel went.  Pl.'s Fact #39; Def.'s Fact #39.

Around July 1, 2011, Defendant liquidated the WhiteHat shares for $433,000.00.  Pl.'s

Fact #48; Def.'s Fact #48.  Defendant then returned the proceeds to Daniel on or about December

2011.  Def.'s Fact ##46-49; J. Kelleher Decl. ¶ 7, Dkt. No. 137; Pl.'s Facts, Ex. 1 (J. Kelleher

Dep.), at 5:21-25, Dkt. No. 110-1.  Defendant explains he returned the proceeds from the shares

because Daniel advised him that Plaintiff could possibly claim the transfer was a fraudulent

conveyance and Daniel did not want to embroil Defendant in his dispute with Plaintiff.  Def.'s

Fact ##49, 106.  Defendant also submitted a declaration to which he attached a copy of a letter

written by Daniel, dated October 10, 2012 and notarized by a Notary Public in San Mateo County,

attesting that Defendant had returned "all gifts of securities and cash" that he made to Defendant

since July 2010, including "the proceeds of the sale of one security while it was in [Defendant's]

possession."  J. Kelleher Decl., Attachment.  According to Defendant, he produced this letter to

Plaintiff in discovery prior to his deposition, and Defendant likewise testified to this information

in his deposition on February 9, 2015.  *Id.* ¶ 7; *see also* J. Kelleher Dep. at 5:21-25.

On October 16, 2013, Plaintiff obtained a judgment against Daniel from the Montana

Eleventh Judicial District Court.  Pl.'s Fact #42; Def.'s Fact ##42, 98; *see also* First Montana

Judgment, Dkt. No. 17-2.[1]  The Montana court awarded Plaintiff $962,576.14 against Daniel, set

aside the Agreement, removed Daniel as a beneficiary of the Trust, and awarded all his beneficial

interest in the Trust to Plaintiff.  First Montana Judgment at 13.  As to the WhiteHat shares

transferred to Defendant, the Montana court awarded them to Plaintiff *nunc pro tunc* as of March

17, 2008.  *Id.*  On November 20, 2013, Plaintiff, in her capacity as Trustee of the Avalanche

Ranch Trust, obtained an additional judgment against Daniel in the amount of $1,725,431.64, plus

interest.  Pl.'s Fact #43; Def.'s Fact #43; Second Montana Judgment, Dkt. No. 55.[2]  Daniel has not

satisfied either judgment.  Pl.'s Fact #44; Def.'s Fact #44.

---

[1] This Court has already taken judicial notice of the Montana Judgment of October 16, 2013.  *See* Order re: Mot. to Dismiss, entered January 9, 2014, Dkt. No. 22, at 1-3.

[2] The Court GRANTS Plaintiff's Request for Judicial Notice (Dkt. No. 55) of the November 20, 2013 Montana Judgment pursuant to Federal Rule of Evidence 201.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of court filings and other matters of public record).

Plaintiff filed this case on November 25, 2013.[3]  Dkt. No. 1.  After filing various iterations of her complaint, Plaintiff moved to file a Third Amended Complaint on May 15, 2015 (Dkt. No. 107), which the Court granted on June 9, 2015 (Dkt. No. 117).  Plaintiff currently alleges four causes of action against Defendant: (1) Actual Fraudulent Transfer, Cal. Civ. Code § 3439.04; (2) Constructive Fraudulent Transfer, Cal. Civ. Code § 3439.05; (3) Common Law Fraudulent Transfer; and (4) Breach of Quasi-Contract/Unjust Enrichment.

On May 21, 2015, Plaintiff filed the instant Motion for Summary Judgment on her second cause of action, the claim for Constructive Fraudulent Transfer, Cal. Civ. Code § 3439.05.  Dkt. No. 109.  Plaintiff contends she is entitled to $433,000 from Defendant, which according to her valuation expert, Gregory P. Tesone, is the value of the WhiteHat shares on the date of the transfer.  Pl.'s Br. in Support of MSJ ("Pl.'s Br.") at 16, Dkt. No. 111; Pl.'s Fact #49.

Defendant did not file a Motion for Summary Judgment, and the deadline to file dispositive motions passed on May 28, 2015.  However, as part of his Opposition to Plaintiff's Summary Judgment Motion, Defendant asserts he liquidated the WhiteHat shares and subsequently reconveyed the full proceeds back to Daniel in December 2011, before this action was filed.  Opp'n at 23, Dkt. No. 124; Def.'s Fact ##48, 105; J. Kelleher Dep. at 5:7-15, Dkt. No. 110-1.  Defendant thus asserts Plaintiff has suffered "no conceivable injury."  Opp'n at 23.  Plaintiff disputes this assertion but does not dispute that Defendant reconveyed the proceeds of the WhiteHat shares to Daniel in December 2011.  Reply at 18-19.  At the hearing on July 23, 2015, Plaintiff's counsel confirmed Plaintiff does not dispute the reconveyance occurred.  Dkt. No. 133.

During the hearing, the Court expressed concern over the cognizability of Plaintiff's claims given Defendant's reconveyance of the WhiteHat shares' proceeds back to Daniel.  In a subsequent order, the Court informed the parties it "ha[d] encountered case law from other courts

---

[3] Plaintiff originally alleged six causes of action against Defendants John Kelleher, Ann R. Wells, John C. Dean and Alice S. Dean: (1) Actual Fraudulent Transfer under California Civil Code section 3439.04; (2) Constructive Fraudulent Transfer Under California Civil Code section 3439.05; (3) Common Law Fraudulent Transfer; (4) Unjust Enrichment; (5) Replevin; and (6) Breach of Construction.  Compl. ¶¶ 71-95, Dkt. No. 1.  Plaintiff dismissed Ms. Wells on January 2, 2014 (Dkt. No. 16), and the Deans on August 27, 2014 (Dkt. Nos. 88-89).

United States District Court
Northern District of California

indicating the reconveyance of a transferred asset may release the transferee from liability under similar enactments of [California's Uniform Fraudulent Transfer Act ('CUFTA')]." Dkt. No. 130 at 2. Given this, the Court issued a notice under Federal Rule of Civil Procedure 56(f) that "Defendant's reconveyance of the proceeds of the shares back to Daniel may be grounds for summary judgment in Defendant's favor on Plaintiff's Constructive Fraud Claim under [C]UFTA." *Id.* The Court stated it was "inclined to grant summary judgment in Defendant's favor on Plaintiff's Constructive Fraudulent Transfer claim[,]" but gave the parties an opportunity to provide supplemental briefing and related evidence on this issue. *Id.* at 3. Both parties timely responded. Dkt. Nos. 134 (Pl.'s Suppl. Br.); 136 (Def's Suppl. Br.). As part of his response, Defendant submitted his declaration, in which he states he "ultimately gained no benefit from the transfers whatsoever, no profit, no distributions that were not returned to Daniel, no interest income, no dividends, no benefit at all." J. Kelleher Decl. ¶ 9.

## LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 324-25.

If the moving party meets its initial burden, the opposing party must then set forth specific

facts showing that there is some genuine issue for trial in order to defeat the motion.  Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250.  All reasonable inferences must be drawn in the light most favorable to the nonmoving party.  *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).  However, it is not the task of the Court to scour the record in search of a genuine issue of triable fact.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The Court "rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment."  *Id.*; *see also Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).  Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found."  *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).  If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law."  *Celotex*, 477 U.S. at 323 (internal quotations omitted).

Additionally, when one party moves for summary judgment and at a hearing the record reveals no genuine dispute on a material fact essential to the movant's case, "the overwhelming weight of authority supports the conclusion that . . . the court may sua sponte grant summary judgment to the non-moving party."  *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982).  The authority of courts "to grant summary judgment *sua sponte* was made explicit in the current version of Rule 56, effective as of December 2010."  *Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir.), *cert. denied sub nom. Scott v. Albino*, 135 S. Ct. 403 (2014) (citing Fed. R. Civ. P. 56(f)).  Specifically, Rule 56(f) permits a court to grant summary judgment for a nonmovant after giving notice and a reasonable time to respond.  Fed. R. Civ. P. 56(f).  "[I]f a court concludes that a non-moving party is entitled to judgment, 'great care must be exercised to assure that the original movant has had an adequate opportunity to show that there is a genuine issue and that his [or her] opponent is not entitled to judgment as a matter of law.'"  *Kassbaum v. Steppenwolf Prods., Inc.*, 236 F.3d 487, 494 (9th Cir. 2000) (citation omitted).

## DISCUSSION

Plaintiff brings this claim against Defendant, arguing he is the transferee who received the WhiteHat Shares conveyed to him by his brother and the alleged-debtor, Daniel.  The threshold

6

1    issue, however, is whether Plaintiff may seek relief from Defendant.  As noted, it is undisputed

2    Defendant reconveyed the WhiteHat shares' proceeds back to Daniel.  Defendant consequently

3    argues that Plaintiff has suffered "no conceivable injury" (Opp'n at 23), and the reconveyance

4    should result in dismissal of her fraudulent transfer claims (Def.'s Suppl. Br. at 13).

5    **A.      Overview of CUFTA and Issue in Dispute**

6             Fraudulent transfer law has been a part of debtor-creditor relations since at least 1571.  5

7    *Collier on Bankruptcy* § 548.01(1)(a), (b) at 548-49 (16th ed. 2010).  "Such laws were enacted to

8    allow a creditor to avoid an improper transaction by a debtor who attempts to unjustly reduce

9    assets and avoid his creditors' claims."  *In re JTS Corp.*, 617 F.3d 1102, 1111 (9th Cir. 2010)

10   (citation omitted).  "The statute was directed at a practice by which debtors sold their property to

11   friends or relatives for a nominal sum, thus defeating creditors' attempts to satisfy their claims

12   against the debtor."  *Kupetz v. Wolf*, 845 F.2d 842, 846 (9th Cir. 1988).  The debtor could then

13   reclaim the purportedly transferred property once the creditor had given up his claim.  *Id.*  Thus,

14   the "basic thrust" of the early fraudulent transfer statute was to "prohibit transfers that hinder,

15   delay, or defraud creditors."  *Id.*  "Such transfers were prevented by making the collusive

16   transferee liable to the creditor in the amount of the transfer."  *Id.*

17            "In the United States, state fraudulent conveyance law in the twentieth century has been

18   expressed through the 1918 Uniform Fraudulent Conveyance Act ('UFCA'), 7A U.L.A. 427

19   (1985), and its successor, the 1984 Uniform Fraudulent Transfer Act ('UFTA'), 7A U.L.A. 639."

20   *In re Pajaro Dunes Rental Agency, Inc.*, 174 B.R. 557, 572 (Bankr. N.D. Cal. 1994).  "California

21   replaced the UFCA with the UFTA in 1986, applying it to all transfers made after January 1,

22   1987."  *Id.* (citing CUFTA, Cal. Civ. Code §§ 3439-3439.12).

23            Under CUFTA, a transfer made "by a debtor is fraudulent as to a creditor whose claim

24   arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a

25   reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that

26   time or the debtor became insolvent as a result of the transfer . . . ."  Cal. Civ. Code § 3439.05.[4]

27

28   _____

[4] A fraudulent transfer may be "actual" or "constructive."  Cal. Civ. Code § 3439.04(a).  The key
distinction between an actual fraudulent transfer claim and a constructive fraudulent transfer claim

United States District Court
Northern District of California

1    "In order for a fraudulent transfer to occur, among other things, there must be a *transfer* of an

2    *asset* as defined in the UFTA." *Fid. Nat. Title Ins. Co. v. Schroeder*, 179 Cal. App. 4th 834, 841

3    (2009) (emphasis in original).  A creditor cannot premise a UFTA claim on a transfer unless the

4    "the transfer puts beyond [the creditor's] reach property [the creditor] otherwise would be able to

5    subject to the payment of [ ] debt." *Opperman v. Path, Inc.*, 2014 WL 1973378, at *31 (N.D. Cal.

6    May 14, 2014) (quoting *Mehrtash v. Mehrtash*, 93 Cal. App. 4th 75, 80 (2001)).  CUFTA thus

7    "permits defrauded creditors to reach property in the hands of a transferee."  *Mejia v. Reed*, 31

8    Cal. 4th 657, 663 (2003)); *see also* Cal. Civ. Code § 3439.08(b)(1).

9         CUFTA is silent on the precise issue of whether a creditor may hold a transferee liable if

10   the transferee reconveyed the asset back to the transferor.  Additionally, whether reconveying the

11   property to the original transferor subjects the original transferee to liability under CUFTA

12   appears to be an issue of first impression in California.  Neither party has cited any case law

13   regarding a transferee's liability after reconveyance to a transferor under CUFTA.

14        The Court's task then is to determine the content and meaning of CUFTA.  "This

15   framework is well-settled."  *In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377, at *8

16   (N.D. Cal. Oct. 2, 2014).  Where there is no state statute that speaks directly to the issue at hand

17   and the state high court considered the issue, "this Court's task is to 'predict' how the state high

18   court would rule."  *Id.* (citing *Hayes v. Cty. of San Diego*, 658 F.3d 867, 871 (9th Cir. 2011);

19   *Lewis v. Tel. Emps. Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996); *In re Kirkland*, 915 F.2d

20   1236, 1239 (9th Cir. 1990)).  "In performing this task, the Court should consider the available

21   reliable evidence, which may include 'intermediate appellate court decisions, decisions from other

22   jurisdictions, statutes, treatises, and restatements.'"  *Id.* (quoting *Vestar Dev. II, LLC v. Gen.*

23   *Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001) and *Lewis*, 87 F.3d at 1545).

24        Additionally, per CUFTA, it "shall be applied and construed to effectuate its general

25   purpose to make uniform the law with respect to the subject of this chapter among states enacting

26   it." Cal. Civ. Code § 3439.11.  The California Supreme Court has thus recognized that other

27

28   "is that the former requires an inquiry into the debtor's intent while the latter requires a calculation
     of insolvency." *Liberty Mut. Ins. Co. v. Hoge*, 2005 WL 756568, at *4 (N.D. Cal. Apr. 1, 2005).

United States District Court
Northern District of California

UFTA jurisdictions may inform courts' analysis of California's UFTA.  *See Mejia v. Reed*, 31 Cal. 4th 657, 666 (2003) (citing Cal. Civ. Code § 3439.11); *In re Beverly*, 374 B.R. 221, 234 (B.A.P. 9th Cir. 2007), *aff'd in part, dismissed in part on other grounds*, 551 F.3d 1092 (9th Cir. 2008) (recognizing California Supreme Court's acknowledgment that courts may rely on other UFTA jurisdictions' decisions to inform their analysis).

**B.      Other UFTA Jurisdictions Have Barred Claims Following Reconveyance**

The Connecticut Supreme Court recently considered whether reconveyance of a transferred asset may release the transferee from liability under Connecticut's UFTA, which is substantially similar to CUFTA.  *See Robinson v. Coughlin*, 266 Conn. 1, 830 A.2d 1114 (2003).  In *Robinson*, the court specifically considered the issue of "whether a transferee of fraudulently transferred assets may be required to pay damages under [UFTA], General Statutes § 52-552a et seq., when the transferee reconveys those assets to the transferor and there is no claim that the assets depreciated in value between the time of the fraudulent transfer and the time of the reconveyance." *Id.* at 1115.  The defendant contended that historically at common law a creditor in a fraudulent conveyance action could pursue the transferee "only for the purpose of obtaining the specific property transferred or the proceeds derived therefrom," whereas the plaintiffs insisted that the UTFA "was enacted specifically to expand the range of a creditor's remedies beyond the common-law property and proceeds rule."  *Id.* at 1117-18 (footnote omitted).

In reviewing Connecticut's UFTA, the court found "[t]he plain language of UFTA demonstrates that its remedies extend beyond those available under the common-law property and proceeds rule," but noted that the statute is "*largely* an adoption and clarification of the common law of fraudulent conveyances . . . [and] a damages award against a fraudulent transferee is *generally* appropriate only where the transferee subsequently disposes of the transferred property and retains the proceeds of that disposition." [5] *Id.* at 1119 (citations and internal marks omitted;

---

[5] CUFTA and Connecticut's UFTA diverge slightly in the wording of the available remedies.  For instance, Connecticut allows an injunction or a receiver to take charge "of the asset transferred or *of other property of the transferee*," *Robinson*, 830 A.2d at 1118 (emphasis in original; *see also* Conn. Gen. Statutes § 52-55h), whereas CUTFA permits remedies concerning "the asset transferred or its proceeds" without reference to other property of the transferee.  *See* Cal. Civ. Code § 3439.07.

United States District Court
Northern District of California

emphasis in original).  The court ultimately disagreed with the plaintiffs that the defendant could be held liable following the reconveyance, noting "a reconveyance of the fraudulently transferred assets serves the creditor's best interests because legal and equitable title is restored to the judgment debtor." *Id.* (citing 37 Am. Jur. 2d 633, Fraudulent Conveyances and Transfers § 140 (2001) for the proposition that although "a fraudulent grantee is under no legal obligation to reconvey, he is under a moral obligation to do so. Therefore, all acts done by him in execution of this duty should be favorably considered in equity, since the moral obligation is a valuable and sufficient consideration for a reconveyance.").[6]

Finally, the *Robinson* court noted there were no longer any remedies available under the UFTA.  First, the plaintiffs could no longer obtain the avoidance of the transfer as the transfer was already undone, nor could they any longer seek an injunction or an attachment related to the transferred assets or the proceeds therefrom.  *Id.* at 1120.  Second, the court rejected the argument that the UFTA provision allowing courts to award "any other relief the circumstances may require" necessarily meant the plaintiffs were entitled to damages, particularly where "they failed to avail themselves of all of the protections afforded under UFTA" by not utilizing the other remedies under the UFTA before the asset was reconveyed.  *Id.*  The court concluded that "because [the transferee] reconveyed the assets to the debtor and the plaintiffs do not claim that the property depreciated in value between the time of the initial transfer and the time of the reconveyance, the trial court properly determined that the plaintiffs cannot recover damages from [the transferee] under UFTA."  *Id.* at 1120-21.

This case is somewhat distinct from *Robinson* in that Defendant reconveyed the asset before Plaintiff brought suit against him, thus preventing her from having the opportunity to utilize CUFTA's array of equitable remedies.  But Plaintiff's other attempts to distinguish this case from *Robinson* are unavailing.

First, Plaintiff argues that later repaying the debtor does not vitiate a claim under CUFTA

---

[6] Defendant points out that the *Robinson* court states it relied on § 140 of American Jurisprudence, not § 114.  Def.'s Suppl. Br. at 8 n.5.  While Defendant is correct that *Robinson* cited § 140, *see Robinson*, 830 A.2d at 1119, this appears to be a mis-cite, as § 140 does not refer to the sections *Robinson* quotes, but § 114 does.

section 3439.05 "because the money that Defendant JK later gifted back to Debtor DK was not an 'exchange' as contemplated by § 3439.05," and therefore that "later gift is of no consequence whatsoever to the § 3439.05 analysis to be performed by this Court."  Pl.'s Suppl. Br. at 4-5.  Presumably Plaintiff is concerned that the Court might misconstrue the analysis and find Defendant's "gift back" of the asset to be an "exchange" under CUTFA section 3439.05, but that is not the issue here, nor does the Court consider the reconveyance necessarily to be a "gift."  Indeed, Defendant argues his payment of the proceeds back to Daniel "was simply a reversal of the original transfer."  Def.'s Suppl. Br. at 10.

Second, Plaintiff contends the *Robinson* court erred "by mis-reading 37 Am.Jur.2d FRAUDULENT CONVEYANCES & TRANSFERS § 114," arguing this provision does not negate an original creditor's rights to avoid the transfer but rather only protects the transferee against claims by the transferee's own creditors.  Pl.'s Suppl. Br. at 5.  She is correct that this provision does, at least in part, implicate the claims of a transferee's creditors, but this does not make the *Robinson* court's consideration of the provision unreliable, and the Court does not agree that the *Robinson* court misapplied this provision in reaching its ultimate conclusion.  While it implicates the claims of a transferee's creditors, the provision also encompasses the claims of creditors of the transferor, citing among others *Modin v. Hanron*, 346 Mass. 629, 195 N.E.2d 61 (1964), where a daughter transferred assets to her father, who later reconveyed the assets to the daughter prior to a judgment being entered against her in favor of her creditors.  When the creditors sought to recover from the father (through the executors of his will), the court dismissed the suit because the father no longer had the funds in his possession.  *Id.* at 62.  On appeal, the Massachusetts Supreme Judicial Court affirmed, citing cases finding it was error to impose personal liability on transferees for more than "the value of the transferred property in their hands."  *Id.*  While the provision of American Jurisprudence cited in *Robinson* is not entirely clear, its citation of *Modin* indicates support for the *Robinson* court's conclusion that the transferee's reconveyance of the fraudulently transferred asset generally relieves him or her of liability.

Third, Plaintiff notes that *Robinson* relied on Connecticut common law, which she argues should have no bearing on California's statutory scheme.  Pl.'s Suppl. Br. at 5.  It is unclear what

11

Plaintiff means by this argument; the *Robinson* court explains the role of the common law in parallel with Connecticut's UFTA—persuasive authority of how a California court might interpret its own UFTA in light of the common law rules, but obviously not binding on this Court. Further, to the extent Plaintiff contends the two states' common law rules on this issue diverge, she has not supported that argument. Indeed, as discussed, *Robinson* cites authority on American Jurisprudence, not merely Connecticut's common law.

Finally, Plaintiff urges the Court to find that *Robinson* "runs directly afoul of the clear language of § 3439.08(b) i.e., 'the creditor may recover judgment for the value of the asset transferred', as well as contrary California decisional law which interprets the California UFTA such that a creditor may indeed 'obtain a money judgment against such a transferee when the property is no longer available.' *Flower & Sons Dev. Corp. v Municipal Court*, 86 Cal.App.3d 818 (Cal.App., Distr. 1, 1978) (interpreting § 3439.08) (numerous citations omitted)." Pl.'s Suppl. Br. at 6 (errors in original). But there are several problems with this analysis.

First, for clarification, *Flowers*[7] does not interpret CUTFA, but the earlier Uniform Fraudulent Conveyance Act, and furthermore it does not interpret section 3439.08 but rather interprets section 3939.09 dealing with remedies to a creditor when a conveyance is fraudulent. *Flowers*, 86 Cal. App. 3d at 824. Second, the current version of section 3439.08 does not support Plaintiff's argument. Rather, this provision appears to cut against Plaintiff's argument because, when read more completely, it states: "*to the extent a transfer is voidable* in an action by a creditor under paragraph (1) of subdivision (a) of Section 3439.07, the creditor may recover judgment for the value of the asset transferred, as adjusted under subdivision (c), or the amount necessary to satisfy the creditor's claim, whichever is less." Cal. Civ. Code § 3439.08(b) (emphasis added).[8] This indicates that to the extent a transfer is not voidable, a creditor may not be able to obtain

---

[7] The correct citation is *Flowers & Sons Development Corporation v. Municipal Court*, 86 Cal. App. 3d 818, 824 (1978).

[8] Paragraph (1) of subdivision (a) of section 3439.07 provides that "(a) In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in Section 3439.08, may obtain:(1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim." Cal. Civ. Code § 3439.07(a)(1).

United States District Court
Northern District of California

United States District Court
Northern District of California

these remedies, or at least not in all circumstances.  Indeed, as Plaintiff argues, section 3439.08(b) governs the defenses for section 3439.05, and reading that provision more completely, section 3439.08(b) appears to work in Defendant's favor as there is no longer a transfer to void.  Finally, in *Flowers*, it appears the transferee retained the value of the fraudulently transferred assets, whereas in *Robinson*, and here, the transferee did not retain any portion of the transferred asset.  In sum, Plaintiff's arguments do not convince the Court that *Robinson* is contrary to California law.

Other courts considering fraudulent transfer claims post-UFTA enactments have relied on similar logic to the *Robinson* court.  For instance, in *In re Patts*, the court granted summary judgment for the transferee on the trustee's UFTA claims after finding that "the transfer the Trustee seeks to avoid has already been undone and the undiminished value of the transferred asset has been restored" to the transferor.  470 B.R. 234, 243 (Bankr. D. Mass. 2012).  In doing so, the court relied in part on a pre-UFTA case, *Northborough v. Risley*, 384 Mass. 348, 424 N.E.2d 522 (1981).  In *Northborough*, the Massachusetts Supreme Judicial Court considered the situation where a debtor transferred property to his wife, who then gave it to her sister's husband, the defendant, all with the intent to put the property beyond the reach of the creditor, but subsequently the defendant sold the property and signed over the entire net proceeds to the debtor.  *Id.* at 522.  The court noted "[t]he defendant received no benefit from these transactions and retained no part of the sale proceeds."  *Id.* at 523.  While the court found the transfer was fraudulent and committed with actual intent, it held that the voluntary reconveyance discharged the defendant transferee's liability.  *Id.*  Although the plaintiff argued the reconveyance of the sale proceeds was not the exact property transferred to the defendant, the court found "the change in the form of the asset is not dispositive."  *Id.*  Accordingly, the Court held "the transferee [wa]s not personally liable to the creditor."  *Id.* at 522.  Finally, the *Patts* court also cited *Modin v. Hanron*, referenced above, for the proposition that "where the fraudulently transferred property was returned by the transferee to the transferor before creditor's claim was reduced to judgment, . . . there was no harm to the creditor[.]"  470 B.R. at 244.

Although the *Robinson* and *Patts* courts' decisions relied on somewhat different versions of the UFTA, they are nonetheless persuasive authorities that CUFTA should likewise be

interpreted to prohibit claims against a transferee who returned the asset to the transferor, thus restoring the creditor to her original position, pre-transfer.  While Plaintiff objects to the Court's consideration of *Northborough* as it is a pre-UFTA case, as *Patts* demonstrates, pre-UFTA enacted cases can be persuasive in considering how to interpret post-UFTA fraudulent transfer actions. *See also Schussel v. Werfel*, 758 F.3d 82, 96 (1st Cir. 2014) (relying on pre-UFTA case law for the rule that "[g]enerally, a fraudulent transferee can reduce or eliminate his liability by returning the property to the original transferor before he receives a notice of transferee liability.").

**C.      Pre-UFTA, California Courts Barred Claims Where Defendant Reconveyed Asset**

The Court now turns to California's pre-CUTFA case law.  First, to confirm California's application of the same basic rule articulated in *Robinson*, Defendant cites *Cohen v. Heavey*, 261 Cal. App. 2d 766 (1986).  In that case, creditors had obtained a judgment against the debtor, and the debtor, allegedly intending to defraud those creditors, sold property to an alter ego corporation, which in turn sold it without consideration to a third party, Heavey.  *Id.* at 768-69.  Heavey later conveyed the property back to the debtor's alter ego, and the property was later sold.  *Id.* at 769. The creditors sued Heavey, seeking an amount sufficient to satisfy the original judgment against the debtor, and the trial court later entered judgment against Heavey.  *Id.*  The California Court of Appeal reversed, holding "[i]n the absence of a finding that Heavey acted with fraudulent intent or that he failed to account for the proceeds of the loan, and in the absence of evidence that he benefited from the transaction in any amount, the judgment cannot be permitted to stand."  *Id.* at 772.[9]  It found that "[i]mposition of personal liability in such circumstances would be unjust and unreasonable."  *Id.* at 771.

*Gobins v. Commissioner of Internal Revenue*, 18 T.C. 1159 (1952), *aff'd per curiam*, 217 F.2d 952 (9th Cir. 1954) is similar.  There, the transferor transferred substantially all of his property to the taxpayer-transferee in fraud of creditors, including the United States government for owed taxes.  *Id.* at 1173.  The transferor subsequently sued the taxpayer to recover the property transferred to the taxpayer-transferee, and that suit was ultimately settled by a retransfer of certain

---

[9] As in *Heavey*, Plaintiff provides no evidence that Defendant acted with fraudulent intent.

United States District Court
Northern District of California

property to the transferor.  *Id.* 1173-74.  When the United States sued the transferee to recoup the money owed by the transferor, the court considered whether the transferee was relieved of liability as to the amounts returned to the transferor.  *Id.* at 1173.  In doing so, the court considered former California Civil Code section 3439.04, *id.*, which was later "reenacted in substantially similar form as section 3439.05."  *Reddy v. Gonzalez*, 8 Cal. App. 4th 118, 122-23 (1992), *modified* (Aug. 4, 1992).[10]  The taxpayer-transferee argued that the return of the money and property to the transferor "purged the transaction of fraud to the extent of the property so returned[.]"  *Gobins*, 18 T.C. at 1173.  The court agreed and held the taxpayer-transferee was not liable to the extent the money and property "retransferred" to the transferor.  *Id.* at 1174.  "The return of the property to [the transferor], to the extent of the property so returned, would, in logic at least, leave his creditors, including the United States, in the same position they were in prior to the transfer[.]"  *Id.* at 1174; *see also Eyler v. C.I.R.*, 53 T.C.M. (CCH) 308 (T.C. 1987) (citing *Gobins* for the proposition that "[a]n exception to the doctrine of transferee liability has been found where a transferee in fraud of creditors reconveys or retransfers property to the transferor.").  The Ninth Circuit affirmed the *Gobins* trial court's decision.  *See Gobins*, 217 F.2d at 952.[11]

Not long after *Gobins*, however, the California Court of Appeal took a slightly different approach.  Specifically, in *Hickson v. Thielman*, 147 Cal. App. 2d 11, 15 (1956), the defendants contended the transferee returned the assets to the transferor and therefore it was error to render judgment against the transferee.  *Id.* at 15.  The Court of Appeal disagreed, noting the trial court

---

[10] The former California Civil Code section 3439.04 provided: "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation incurred without a fair consideration."  *Gobins*, 18 T.C. at 1173.

[11] "The reasoning behind the rule regarding retransfers is that transferee liability is inappropriate where a retransfer returns the transferor and transferee to the same relative economic positions as prior to the fraudulent transfer."  *Hagaman v. C.I.R.*, 100 T.C. 180, 191 (1993).  "[I]f a transferee reconveys the property to the transferor prior to the respondent's taking action to collect from the transferee, the transferee relieves himself of any liability, since the retransfer purges the fraud from the original transfer, the return of the property serving to leave the creditor in the same position he was in prior to the original transfer."  *Id.* at 189-90 (citations omitted); *see also Louise Noell*, 22 T.C. 1035, 1043 (1954) (holding that assets retransferred to the transferor—including cash from the sale of transferred stocks—must be offset against the total originally transferred).

United States District Court
Northern District of California

did not appear to believe the transferee's testimony that he had actually returned the assets and that there was evidence to support that the transferee had conspired with others to defraud the plaintiff-creditors.  *Id.*  In other words, the trial court found that the defendants "had an actual intent to defraud plaintiffs." *Id.*  Citing *Hickson*, the California Jurisprudence consequently states: "[a] transferee who receives money with intent to defraud the transferor's creditors does not relieve himself or herself of liability to the creditors by returning the money to the transferor."  16A Cal. Jur. 3d Creditors' Rights and Remedies § 416 (footnotes omitted) (citing *Hickson*, 147 Cal. App. 2d at 15).

In a more recent case, however, the Ninth Circuit took a closer look at *Hickson* and noted the "court assumed that there had been no return of money which had been fraudulently taken." *Hassen v. Jonas*, 373 F.2d 880, 884 (9th Cir. 1967).  But that problem did not exist in *Hassen,* where it was undisputed the transferee restored the asset of $28,000 to the transferor over the period of 11 days.  *Id.* at 883.  Thus, instead of supporting a penalty against the transferee as was permitted in *Hickson*, the Ninth Circuit held it was error for the lower court to have awarded the creditor a penalty of $28,000 against the transferee.  *Id.*  In considering CUTFA's predecessor,[12] albeit in a bankruptcy proceeding, the Ninth Circuit noted:

> The effect of [California's] legislative declaration that transfers within the statute are fraudulent is that such transfers are deemed void as to creditors. [citation omitted].  The transfer being void, a creditor can reach the property as though the transfer had not been made. [citation omitted].  *Where the person responsible for the fraudulent transfer has himself remedied the situation by returning the transferred property, the statutory purpose has been satisfied.*

*Id.* (emphasis added).  The Ninth Circuit cautioned that upholding a finding of liability in that case would suggest the defendant would be required to pay the penalty of $28,000 regardless of whether he "restored the money within one hour or one instant."  *Id.* at 884.  The Court concluded: "We cannot escape the conclusion that there was strain, if not torture, here imposed upon the

---

[12] Specifically, the Ninth Circuit considered the former section 3439.07 of the California Civil Code, which stated: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."  *Hassen*, 373 F.2d at 883.

1    statute" by allowing such a penalty.  *Id.*  It also concluded that "[w]e are disinclined to create, by

2    court, decision, a new rule of liability and a new measure of damages to attend it when there are

3    already defined remedies under existing federal and California law."  *Id.*  There is no indication

4    that CUFTA altered the basis for the Ninth Circuit's finding in *Hassen* or the prior opinions of

5    *Heavey* and *Gobins*.

6    **D.    Application to the Facts**

7           It is undisputed that Defendant returned the WhiteHat proceeds to Daniel in December

8    2011, about two years before Plaintiff's Montana judgment.  Given the foregoing case law and

9    authority, the Court finds the consequence of Defendant's return of the WhiteHat proceeds is that

10   "there [i]s, effectively, no transfer to avoid."  *Robinson*, 830 A.2d at 1120.

11          But Plaintiff raises several arguments about why Defendant's return of the WhiteHat

12   proceeds is insufficient.  First, she argues "defendant did not return the WhiteHat shares to DK,

13   but instead apparently liquidated those shares and sent the balance to DK net of taxes."  Reply at

14   18.  Accordingly, she asserts "DK did not get back the full value of the WhiteHat shares."  *Id.*

15   While Plaintiff is correct that Defendant did not transfer the exact asset back to Daniel, as in

16   *Northborough*, the change in the form of the transferred asset is not dispositive.  *See* 424 N.E.2d at

17   523.  Plaintiff has not indicated there was any diminution of value of those shares as a result of

18   their sale.  *See Robinson*, 830 A.2d at 1115 (considering whether "the assets depreciated in value

19   between the time of the fraudulent transfer and the time of the reconveyance.").  It is not as if

20   Plaintiff or Daniel would have been able to avoid paying taxes on the sale of those shares had they

21   been in their hands rather than Defendant's.

22          Second, Plaintiff indicates that the Court is bound by its prior analysis; as Plaintiff states:

23   "it should be recalled that this Court has previously ruled that 'section 3439.08 provides that a

24   creditor can recover a money judgment (which are not "damages") against a transferee.'  Order re:

25   Motion to Dismiss, Dkt# 40, at 9.11-13."  Reply at 18.  Plaintiff is correct that the Court found

26   that a money judgment was recoverable if the exact asset itself was unrecoverable from the

27   transferee, *see* Dkt. No. 40 at 9; however, that Order did not in any way address or resolve the

28   present issue of whether Defendant's reconveyance to Daniel impacts his liability.

United States District Court
Northern District of California

1     Third, Plaintiff argues there is no "returning the asset defense" named in the UFTA and

2  that "as a matter of public policy, it would frustrate the purposes of the fraudulent transfer laws if

3  a debtor and an sympathetic transferee could continually play a 'shell game' of the debtor

4  transferring assets out of the reach of creditors on a temporary basis to the transferee until the

5  debtor can evade his creditors and reach a place of temporary safety, whereupon the transferee

6  then reconveys the assets to the debtor, and then the process starts anew when the debtor is

7  located."  Reply at 19.  The Court is sensitive to the public policy issues present in this matter.

8  However, courts that have considered similar situations, as noted above, have found it

9  inappropriate in such instances to penalize the transferee who attempts to free himself of the

10  tainted asset, or where, as the Ninth Circuit artfully put it, the transferee "has himself remedied the

11  situation by returning the transferred property," thus satisfying the statutory purpose.  *Hassen*, 373

12  F.2d at 883.  As the Ninth Circuit explained, "it would be manifestly inequitable to require Hassen

13  . . . to pay to the trustee an additional $28,000, plus interest from the date of the withdrawal, when

14  it is undisputed that the money, plus an additional $2,000, was repaid by Hassen . . . and when, so

15  far as can be seen from the record, no damage resulted to the creditors."  *Id.*  The Court shares a

16  similar concern; namely that to allow a penalty on these facts may actually be an expansion of

17  CUFTA, providing a "remedy" that is not remedial of a cognizable injury.

18     Despite the absence of an explicit defense under CUFTA for "returning the asset,"

19  Defendant's decision to return the proceeds of the asset to his brother negates Plaintiff's claims

20  against him as she has not shown she was injured.  First, Defendant has executed his moral

21  obligation to reconvey the asset, and second, as in *Robinson*, the return of the assets serves the

22  creditor's best interests because legal and equitable title is restored to the judgment debtor,

23  Plaintiff's ex-husband.  Plaintiff has in effect been restored to her original position, and she has

24  not otherwise indicated how she suffered an injury that entitles her to a remedy beyond what has

25  already occurred.  Indeed, "[a] well-established principle of the law of fraudulent transfers is that a

26  transfer in fraud of creditors may be attacked only by one who is injured by the transfer."  8

27  Witkin, Cal. Proc., Enforcement of J. § 497 (5th ed. 2008).  "It cannot be said that a creditor has

28  been injured unless the transfer puts beyond the creditor's reach property that the creditor

United States District Court
Northern District of California

18

United States District Court
Northern District of California

otherwise would be able to subject to the payment of the debt." *Id.*  As Defendant effectively

voided the transfer himself, and Plaintiff has not indicated that she suffered any other injury

entitling her to relief, Plaintiff has not shown how her fraudulent transfer claims provide her with a

remedy.  *See Mehrtash*, 93 Cal. App. 4th at 80 ("Mere intent to delay or defraud is not sufficient;

injury to the creditor must be shown affirmatively.  In other words, prejudice to the plaintiff is

essential.  It cannot be said that a creditor has been injured unless the transfer puts beyond [her]

reach property [she] otherwise would be able to subject to the payment of [her] debt." (quotation

omitted)).  Indeed, "[a] defrauded creditor is not entitled to an enhancement of position beyond

what it was before the fraud."  *Renda v. Nevarez*, 223 Cal. App. 4th 1231, 1238 (2014) (citation

and internal marks omitted).

Plaintiff argues it would be unfair to allow Defendant to utilize this so-called "defense"

considering (1) he did not explicitly plead it, (2) Plaintiff did not conduct particular discovery on

it, and (2) Defendant did not raise it in his Opposition.  Pl.'s Suppl. Br. at 13.  However,

Defendant did raise the issue about whether Plaintiff was injured by the transfer given the

reconveyance of the asset back to Daniel before this case was filed by arguing Plaintiff has

suffered "no conceivable injury."  Opp'n at 23.  Plaintiff responded to those arguments in her

Reply (*see* Reply at 18-19) and did not then raise the issue of whether she had conducted

discovery on this issue.  Nor is there any indication that Plaintiff was blindsided with the fact that

the asset had been reconveyed to Daniel.  Plaintiff's counsel readily agreed this fact was

undisputed at the hearing.  Further, Plaintiff knew about the reconveyance before Defendant's

deposition in February 2015 and in fact questioned him on it.  J. Kelleher Decl. ¶ 7; J. Kelleher

Dep., at 5:21-25.  Given the undisputed nature of this key fact, it is not clear what, if any,

discovery Plaintiff would need at this point to address the issues covered in this Order.

In her Reply, Plaintiff argues that "returning the moneys from the WhiteHat shares to a

defendant who has absconded to parts unknown (defendant admits that he doesn't know where

DK is) is not practically different than burning the money, i.e., putting fraudulently transferred

assests [sic] out of the reach of creditors amounts to waste."  Reply at 19 (37 C.J.S. Personal

Judgment § 444 (1943)).  Plaintiff may be correct to an extent.  As recognized by one court,

"historically, a money judgment is involved in a fraudulent conveyance action only when the fraudulent grantee has destroyed, wasted, or otherwise put the subject of the conveyance out of the creditor's reach." *Bank Indep. v. Coats*, 621 So. 2d 951, 952 (Ala. 1993) (citing 37 C.J.S. *Personal Judgment* § 444 (1943)).  But here there is no evidence that Defendant actually destroyed or wasted the asset, and Plaintiff has submitted no evidence that the subject of the conveyance, i.e., the proceeds from the WhiteHat shares, are in fact beyond her reach.  Plaintiff indicates that Daniel absconded years ago, but through her Motion, Reply, and Supplemental briefing, there is no evidence about what efforts Plaintiff has made to find Daniel at this point or that the assets are out of reach.  Indeed, the letter from Daniel to Defendant indicates Daniel was in San Mateo, California, in 2012, as the document was signed by a San Mateo Notary Public.  There is no indication that more time for discovery or an opportunity to submit yet more supplemental briefing would be beneficial at this point, as the fact remains that Defendant's reconveyance put Plaintiff in the same position she was before the allegedly fraudulent transfer.  And even if it is correct that "[a] transferee who receives money with intent to defraud the transferor's creditors does not relieve himself or herself of liability to the creditors by returning the money to the transferor," (16A Cal. Jur. 3d Creditors' Rights and Remedies § 416 (citing *Hickson*, 147 Cal. App. 2d at 15)), there is no evidence suggesting that *Defendant* intended to defraud Plaintiff in accepting the WhiteHat shares from Daniel.  Without more, "[e]ven assuming that plaintiff proved the elements of a constructively fraudulent transfer, plaintiff failed to prove she was injured by it." *Mehrtash*, 93 Cal. App. 4th at 82.

Finally, while CUFTA broadly permits that creditors "may obtain . . . any other relief the circumstances may require," Cal. Civ. Code § 3439.07(a)(3)(C), the circumstances of this case do not warrant twisting this provision of CUFTA to provide what would be essentially a penalty against Defendant.  First, CUFTA's remedies are primarily equitable in nature, and indeed, this provision itself is "[s]ubject to applicable principles of equity[.]" *See id.* § 3439.07(a)(3). Plaintiff has not shown how equity is served by penalizing Defendant under these circumstances. Second, to the extent this provision of CUTFA could be interpreted to allow a penalty against Defendant for his involvement in Daniel's actions, the Court declines to do so in these

1  circumstances. CUTFA provides the creditor "may" obtain other relief as the circumstances

2  require; "when a statute provides a court 'may' do something, the statute is permissive, not

3  mandatory, and grants the court a discretionary authority." *Renda*, 223 Cal. App. 4th at 1237

4  (holding "a court may refuse to enter a money judgment against a person for whose benefit a

5  fraudulent transfer was made if an applicable legal or equitable principle bars entry of such a

6  judgment."). As of the date of this Order, Plaintiff has not provided evidence supporting that (1)

7  Defendant benefitted from receiving the transferred shares; (2) the value of the WhiteHat shares

8  depreciated from being under Defendant's control; or (3) Plaintiff requires relief from Defendant

9  in particular, rather than pursuing her claim against her ex-husband. Given the foregoing, the

10 Court finds the circumstances in this case do not provide an appropriate basis on which to provide

11 relief under CUTFA's otherwise broad remedial provision.

12      Accordingly, in light of the present circumstances and the analysis above, the Court cannot

13 find that Plaintiff may maintain her Constructive Fraudulent Transfer claim against Defendant.

14 **E.    Plaintiff's Other Claims**

15      Although the Court's Rule 56(f) notice was limited to Plaintiff's second cause of action for

16 Constructive Fraudulent Transfer under California Civil Code section 3439.05, on closer analysis

17 of CUFTA, fraudulent transfer law, and Plaintiff's other claims, the Court cannot see how Plaintiff

18 can maintain her other claims given Defendant's reconveyance.

19      Plaintiff's first cause of action is for Actual Fraudulent Transfer law under California Civil

20 Code section 3439.04. CUFTA's Actual Fraudulent Transfer law looks to the intent of the

21 transferor, not the transferee. *See* Cal. Civ. Code § 3439.04(a) (inquiring into the "debtor's"

22 intent, i.e., the transferor). It further provides the same remedies as a violation of section 3439.05

23 (Constructive Fraudulent Transfer) and the same protections of the transferee. *See* Cal. Civ. Code

24 §§ 3439.07-3439.08. Thus, even if there was evidence showing that Daniel acted with actual

25 intent to defraud Plaintiff as provided for in section 3439.04, CUFTA's available remedies do not

26 provide Plaintiff with a remedy against Defendant. As noted above, in light of Defendant's

27 reconveyance, the Court cannot find Defendant liable on these facts even if the evidence shows

28 Daniel transferred the asset to Defendant in violation of CUFTA's Constructive Fraudulent

*United States District Court*
*Northern District of California*

Transfer law.  There is no reason the Court could otherwise do so if there was evidence Daniel acted with actual fraudulent intent.  Given Defendant's choice to retransfer the asset back to Daniel before Plaintiff brought this suit, CUFTA's Actual Fraudulent Transfer law does not somehow separately provide Plaintiff with a remedy against Defendant.

Likewise, Plaintiff's Common Law Fraudulent Transfer claim relies on the same elements as the California statutory claims.  *See* Dkt. No. 22 at 10; Dkt. No. 40 at 8 (Orders on Motions to Dismiss finding same).[13]  But again, even if Plaintiff is able to prove the elements of her Common Law Fraudulent Transfer claim, she still has not shown that she has been injured as a result of Defendant's conduct.  Defendant restored Plaintiff back to her original position by returning the asset to Daniel, and there are no allegations or other evidence demonstrating that Plaintiff has been harmed by Defendant or that he was unjustly enriched with assets Plaintiff has claim to.  Indeed, there is no evidence Defendant kept any part of the disputed assets.  *Cf. Lloyds Bank Cal. v. Wells Fargo Bank*, 187 Cal. App. 3d 1038, 1042-43 (1986) (indicating that a resulting trust may arise by operation of law from a fraudulent transfer when the transferee retains an interest in the property).

Finally, to the extent Plaintiff's fourth cause of action, her Unjust Enrichment claim, could survive on its own, even taking the evidence in the light most favorable to Plaintiff, there is no indication anywhere in the record that Defendant received a benefit or unjustly retained a benefit at the expense of Plaintiff.  *See Herrington v. Johnson & Johnson Consumer Co., Inc.*, 2010 WL 3448531, at *13 (N.D. Cal. Sept. 1, 2010) (describing theories under which a Plaintiff may maintain an unjust enrichment/quasi-contract claim).  The undisputed fact is that Defendant returned the full net proceeds of the WhiteHat shares to Daniel before this case was ever filed.

While Plaintiff seeks to hold someone accountable for her troubles, Defendant is not the proper person with whom to seek retribution—or at least not under these claims.

//

//

---

[13] California recognizes that fraudulent transfer common law causes of action are not preempted by CUFTA and remain available remedies.  *Fid. Nat. Title Ins. Co. v. Schroeder*, 179 Cal. App. 4th 834, 849 (2009).

# CONCLUSION

In light of the foregoing, the Court issues this **TENTATIVE** ruling DENYING Plaintiff's Motion for Summary Judgment and GRANTING Defendant summary judgment on all currently pending claims.  Because the Court's prior Rule 56(f) Notice did not apply to all claims, the parties will have 14 days from the date of this Order to file objections to the Court's ruling above and provide the grounds for their objections.  If no objection is filed, this Order will become final without further order of this Court, and the Court will enter judgment pursuant to Federal Rule of Civil 58.  Alternatively, within the same time period, the parties may file a stipulated statement or individual statements accepting this Order as the final order of the Court and preserving objections for appeal.  Following receipt of such a statement(s), the Court will enter judgment pursuant to Federal Rule of Civil 58.

**IT IS SO ORDERED.**

Dated: September 29, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge